UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

Plaintiff,

v.

MATTHEW FARWELL,

Defendant.

Civil Action No: 1:24-cr-10259-DJC

March 5, 2026
11:29 a.m.

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE DENISE J. CASPER

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA 02210

JESSICA L. BISAILLON, RPR, CRI
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5200
Boston, MA 02210
jsteno99@gmail.com

APPEARANCES:

FOR THE PLAINTIFF:

UNITED STATES ATTORNEY'S OFFICE
District of Massachusetts
By: Torey B. Cummings, Esquire
By: Elizabeth Riley, Esquire
By: Brian Alexander Fogerty, Esquire
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
617.748.3281
torey.cummings@usdoj.gov
elizabeth.riley2@usdoj.gov
brian.fogerty@usdoj.com

FOR THE DEFENDANT:

CAPITAL RESOURCE COUNSEL PROJECT
By: Kimberly C. Stevens, Esquire
1071-1 Tunnel Road, Suite 10 #215
Asheville, North Carolina 28805
336.575.4337
kim_stevens@fd.org

FEDERAL DEFENDER OFFICE
By: Sandra M. Gant, Esquire
51 Sleeper Street, 5th Floor
Boston, Massachusetts 02210
617.223.8061
Sandra_Gant@fd.org

RHODE ISLAND PUBLIC DEFENDER
By: Joanne M. Daley, Esquire
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903
401.528.4281
joanne_daley@fd.org

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Denise J. Casper, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on March 5, 2026.)

THE CLERK: All rise.

(The Court entered the courtroom.)

THE CLERK: Court is in session. Please be seated.

Criminal action 24-10259, United States v. Matthew Farwell.

Would counsel please state your name for the record?

MR. FOGERTY: Good morning, Your Honor. Brian Fogerty on behalf of the United States.

THE COURT: Good morning, counsel.

MS. CUMMINGS: Good morning, Your Honor. Torey Cummings for the United States.

THE COURT: Good morning.

MS. RILEY: And good morning, Your Honor. Elizabeth Riley for the United States.

MS. DALEY: Good morning, Your Honor. Joanne Daley for the defendant, Matthew Farwell.

THE COURT: Good morning.

MS. STEVENS: Good morning, Your Honor. Kim Stevens for Matthew Farwell, and Matthew Farwell is seated at counsel

table.

THE COURT: Good morning.

Good morning, sir.

THE DEFENDANT: Good morning, Your Honor.

MS. GANT: Good morning, Your Honor. Sandra Gant also on behalf of Mr. Farwell.

THE COURT: Good morning.

Counsel, sir, I know we're here on Mr. Farwell's motion to dismiss. I've had a chance to review the papers on either side. I'm prepared to hear argument.

MS. DALEY: Thank you, Your Honor.

Your Honor, an indictment not framed to inform a defendant with reasonable certainty of the nature of the accusation against him is defective. A vital function of an indictment is to provide such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation.

This principle is derived directly from the Sixth Amendment's guarantee of the rights of an accused to be informed of the nature and cause of the accusation and is basic to the proper functioning of our adversary system of justice.

Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him.

THE COURT: But, counsel, hasn't that been done here in regards to the essential elements of each of the charges? And I know you're focused on Count One. But isn't that true as to Count One and Count Two?

MS. DALEY: That is not correct, Your Honor.

THE COURT: Okay.

MS. DALEY: And the -- the indictment in this case is defective in both form and substance. And starting with form, as to the form of the indictment, the defendant is charged in Count One with killing a witness or victim in violation of 18 U.S. Code 1512(a)(1)(C).

Mr. Farwell is charged in Count Two with violating 18 Code -- 18 U.S. Code Section 1841(a)(1), (a)(2)(A), and (a)(2)(C), protection of unborn children, but that court -- that count incorporates by reference the predicate offense 18 U.S. Code Section 1512, killing a witness or victim.

Section (a)(1)(C) of that statute, 1512, reads, "Whoever kills or attempts to kill another person with intent to: prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense..."

In Mr. Farwell's case, the indictment is defective on its face because it omits the essential language "law enforcement officer or judge of the United States."

In choosing to admit this -- omit this language, the government rendered the indictment fatally defective. Federal rule --

THE COURT: But, counsel, what do you -- what is your best response to the government's argument and position that the statute defines "law enforcement officer," which is a term of art, at least under 1512, to mean a federal law enforcement agent or -- federal law enforcement agent?

MS. DALEY: Your Honor, that doesn't suffice for several reasons.

One, Rule 7 requires that they cite the official or customary language in the indictment, and they failed to do so.

Next, if the government is averring that the grand jury relied in fact upon 18 U.S. Code 1515(a)(4), there is no citation to that statute in the indictment, nor has the government proffered in its reply that they were so instructed.

In this case, the Court is left with, obviously, supposition about what the grand jury understood. And grand jurors are laypeople. To suggest that without instruction they would have assumed law enforcement only meant federal, I would submit, is a bridge too far.

In this case, the government has cited the First Circuit's decision in *United States v. Troy*, but that case is actually helpful to the defense in that it reads in citing in Rule 7, An indictment that faithfully tracks the language of

the underlying statute generally suffices to meet the requirement that an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged; provided, however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty.

So we start off with the omission of necessary statutory language, and then we move onto the failure of the government to sufficiently apprise the defendant of the offense conduct and federal nexus.

Here, the government, I would argue, cannot say that failing to include that essential language in the statute, report to federal law enforcement or a judge, is excusable.

And, in fact, the government in their opposition memo have asked -- has asked the Court to rely on the decision in *United States v. Baugh.*

*Baugh* was presented to the grand jury about four years prior to the indictment of Mr. Farwell. And in *Baugh*, where the defendant was charged with violating Section 1512 of 18 U.S. Code, the grand jury was properly instructed with the correct and full statutory language.

The indictment in *Baugh* read, "with intent to hinder, delay and prevent the communication to a law enforcement officer of the United States."

So the very case the government is asking the Court to

rely upon doesn't have this omission in the statutory language of the indictment. And we do have a copy of the indictment in *Baugh* if the Court would like to look at it.

Similarly, in a case that Your Honor presided over, *United States v. Casanova* nearly ten years ago, that defendant was also charged with a 1512 offense, and that indictment read, "with intent to prevent the communication to a law enforcement officer and judge of the United States." And we have that indictment as well.

Obviously, this is an admittedly limited survey of only three cases, but it does appear that the omission of the necessary statutory language in the government's presentation to the grand jury in Mr. Farwell's case is an outlier.

And it's also worth noting that Mr. Farwell's -- the charges in this case were presented not once, but twice to a grand jury, and both times the necessary statutory language of report to federal law enforcement or a judge was omitted.

Your Honor referenced Count One versus Count two, and so I -- I'll address that.

The government in its opposition contends without explanation that Count Two is independent of Count One, and, frankly, that response left the defense somewhat confused.

The government argues that Count Two is a separate and independent federal offense. Whether it can be independently charged is not the issue here. Count Two punishes anyone who

engages in specifically enumerated offenses and thereby causes the death of a fetus in utero.

The specific offense here is witness killing under 18 U.S. Code 1512. But the language of the superseding indictment in this case betrays the government's own argument here. They specifically allege that Matthew Farwell did engage in conduct that violated U.S. Code 1512 and thereby caused the death of a child in utero at the time the conduct took place.

This should require them to concede that they must prove the 1512 violation, including all of the elements in order for the 1841 indictment to survive. The statute itself, 18 U.S. Code 1841, only permits prosecution when there has been conduct in violation of the laws enumerated at subsection (b).

By its own plain language, 1841 requires the government to prove the predicate offense under 1512. This does not mean that 1512 need to be charged -- it was here -- but it means that the government must establish that the defendant caused the death of a child in utero during the course of conduct that violates 1512.

If the underlying conduct does not fit one of the enumerated predicate offenses under subsection (h), the indictment charged in 1841 is invalid as a matter of law.

If Congress intended to criminalize and punish the death of a child in utero during any course of conduct, it would not have limited prosecutions to the predicate offenses

listed at subsection (h) -- I'm sorry -- subsection (b), nor would it have included a broader scope or a residual clause. It did not.

The government in its opposition wrote that Mr. Farwell did not argue or cite any authority for the proposition that Count Two must incorporate all of the allegations of a separate Section 1512 offense. However, this indictment did incorporate all of the allegations of the separate 1512 offense.

THE COURT: I understand the argument, counsel.

MS. DALEY: Your Honor, moving onto the substance, I would note -- well, moving onto the substance, in referencing one paragraph and only one paragraph of the general allegations of both counts, because they mirror each other, only one paragraph, a single general allegation, references a report to law enforcement in this case for a report made by a third party, not the alleged victim, to local law enforcement.

This single paragraph coupled with the omission of the necessary statutory language begs the question, how can the defendant and the Court identify a federal nexus in this case? It cannot, which brings us to substance.

Generally speaking, technical deficiencies --

THE COURT: But doesn't 1512 allow that the communication be to any person?

MS. DALEY: There has to be -- well, the communication

can be to any person, but it has to be that it will be reported to federal law enforcement, at least one report will be made to federal law enforcement, and that's what's lacking in this indictment.

Technical deficiencies in an indictment will not result in dismissal; however, an adequate indictment must still offer the procedural protections a grand jury indictment was intended to confer. And that's a substantial issue in this case. What was the indictment that was conferred in this case?

Where guilt depends so crucially upon such a specific identification of facts, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute. And that's the First Circuit in *United States v. Mercy* -- *Murphy*.

While the Supreme Court in *Fowler* may not have added an element to an offense under 1512(a)(1)(C), it identified at a minimum an essential fact constituting the offense.

Essential facts are those facts that will inform the accused of the specific offense coming under the general description with which he is charged and those facts for a grand jury to determine -- those facts necessary for a grand jury to determine what the question under inquiry was. These are facts that must be pleaded in an indictment because, absent these facts, it would be nothing but a subsequent guess as to what was in the minds of the grand jury at the time they

returned the indictment, and the defendant could then be convicted on the basis of facts not found by and perhaps not even presented to the grand jury which indicted him, which would deprive him of a basic protection which the guarantee of the intervention of a grand jury was designed to secure. And that's from *Fowler* and *United States v. Russell*, both Supreme Court cases.

This was not the challenge in *Baugh,* the case the government is asking the Court to rely upon.

As the court in that case found, by stating the relevant factual background to show a reasonable likelihood of a federal investigation, the indictment put the defendants on notice of the charge that a federal investigation was reasonably likely.

And I think it's important to point out in -- in *Baugh*, Judge Saris went on in Footnote 10. Even if there was such a requirement to specifically allege reasonable likelihood, the government points out that the indictment states that the relevant factual background connected to the element to show a reasonable likelihood of a federal investigation and points to the general allegations -- 11 pages of general allegations in the *Baugh* case, Your Honor -- that Baugh, Harville, and their coconspirators took steps to conceal their harassment campaign from eBay investigators and state and federal authorities. And the court added emphasis to "and

federal" in that footnote.

In other words, the court in *Baugh* found that the general allegations did not amount to "material uncertainty," which was the term used by the First Circuit in *Troy*.

And that's also a case, interestingly enough, that the government is asking the Court to rely upon.

But that is not the record the Court has before it now in Mr. Farwell's case.

THE COURT: But I guess, counsel, first of all, I'm not sure that I agree with your distinguishing *Baugh* from the facts here. And I have it in front of me and I've reviewed it before.

And isn't there some context in terms of federal law enforcement where there's an enumeration of the commission of federal offenses? Doesn't that bear upon who the communication would be to in terms of law enforcement?

MS. DALEY: Well, Your Honor, meaning that the federal crime at issue is a federal offense and, therefore, it can be presumed that it would have been reported to federal law enforcement?

THE COURT: I thought that was part of the government's argument.

MS. DALEY: Well, Your Honor, that actually is not in keeping with the Supreme Court's -- Supreme Court's finding in *Fowler*.

In *Fowler*, the -- the defendant and -- and his coconspirators were planning a bank robbery. The victim, a local police officer, came upon them and they shot and killed him.

If it was enough that the local law enforcement officer would have reported a federal offense, then that would have not been -- then the finding in *Fowler* would not have been what it was.

Here, there must be a -- the -- well -- and to be clear, we are asking the Court to go the extra step in adopting the finding in *Ortiz*. But the material fact in this case --

THE COURT: That was the Judge Seeborg case out of the Northern District?

MS. DALEY: Yes, Your Honor.

In *Ortiz*, in considering the validity of an indictment charging an offense under 1512, the District Court ruled that the reasonable likelihood that there would be a communication to federal law enforcement is an essential fact that must be in the indictment. And the court noted that such information is critical to establish federal jurisdiction. The indictment does not guarantee the grand jury considered whether there was a reasonable likelihood of communication with federal law enforcement in the absence of such an averment in the indictment.

THE COURT: But, counsel, isn't there a general

principle that the means by which the government proves essential elements does not need to be alleged in the indictment? Isn't that the upshot of *Baugh*?

MS. DALEY: No. We are -- I think the issue here is elements versus material facts. And I'd submit that the government in its opposition -- the government in its opposition conflates essential facts with elements of the offense.

The Court in *Ortiz* did not add a new element to the offense. That would run afoul in the holding in *Fowler*. The decision in *Ortiz* is firmly rooted in the Supreme Court's ruling in *Fowler*. So it's not an element. It's an essential fact that must be found in order to sufficiently apprise the defendant of what he's charged with to prepare for trial to protect his due process rights and protect him against double jeopardy.

And while we are asking the Court to adopt the finding in *Ortiz*, even if the Court here declines to do that, there is a sufficient basis to dismiss this indictment based on the fact that the indictment on its face is facially defective and the defendant has not been sufficiently apprised of the conduct as is required by *Russell*, *Fowler*, and, frankly, even by *Baugh*.

It's worth noting that while *Ortiz* -- obviously, Your Honor is correct. It's a case of -- of concurrent jurisdiction with this court.

But I think it is worth noting that the government in *Ortiz* did file an interlocutory appeal challenging the dismissal on those two counts, challenging that court's finding that it was a material fact that needed to be pleaded.

And in *Ortiz*, the U.S. Attorney's Office opted to withdraw that appeal and they proceeded with a plea agreement where those charges remained dismissed.

As the Court knows, the government has the right of interlocutory appeal in the context of a motion to dismiss where the defendant does not.

The Superseding Indictment charging Mr. Farwell fails to include the relevant factual background establishing federal jurisdiction. It fails to allege, at a minimum, facts supporting a reasonable likelihood that the communication prevented would have been to federal law enforcement or a federal judge.

The government in its opposition references the term "judicial gloss." And that's from *United States v. Troy* again.

A judicial gloss, though helpful in interpreting a criminal statute, need not be included verbatim in the charging doc -- document.

But, Your Honor, a deficiency of gloss is not the issue here. Mr. Farwell is not arguing that the charging document in his case is not sufficiently polished or shiny. To put it in layman's term -- terms, there is no base coat

here. There is no foundation.

And I think the facts in *Troy* are also worth noting when deciding what the court in that case meant by "judicial gloss."

In *Troy*, Roxanne Troy was charged with three counts: two counts of solicitation to commit arson and one count of attempted arson.

On appeal, she argued that the -- all three counts should have contained language from *Jones* as to the issue of whether or not the building at issue was used in interstate commerce.

So, in *Troy*, that language, that at the relevant time frame a building used in interstate commerce and in activities affecting interstate commerce, that language was in Count Three. It was not contained in Counts One and Two.

So the court in *Troy* in affirming the conviction said that's judicial gloss, meaning it was -- it was included in one count. It doesn't need to be included in the other two.

But what the Court found in *Troy* was that the indictment was sufficient because it plainly identified the building that was the target of the planned arson and the time frame in which the criminal conduct allegedly occurred.

The issue of target in this case is not identical, but it's similar in that there is no language in the indictment that the report was to federal law enforcement and no evidence

to suggest that it would have been.

As I read earlier in *Troy*, the language that I would ask -- that we would ask the Court to rely upon is material uncertainty.

Does this combination in terms of errors in form and substance, errors in the form of the indictment and a lack of substance in the general allegations, does that result in material uncertainty? And it's the defense position that it does. The indictment here did not --

THE COURT: But I understood, counsel, just to go back to this *Fowler* issue and sort of the difference that the court takes away from *Ortiz* versus *Baugh*, under *Fowler*, the reasonable likelihood is where there's a situation of an intent to prevent communications generally with law enforcement as opposed to a particular federal officer. Meaning, I'm not sure that I'm following the requirement that that language be included in an indictment where it is one of two ways in which the government can prove the elements.

MS. DALEY: And, Your Honor, I'm -- I'm sorry. I'm not following in what --

THE COURT: So putting aside your argument about whether or not it should have been federal law enforcement or the term of art of "law enforcement" in the indictment, I'm still not following why the specific language in *Fowler* must be included in the indictment where the reasonable --

reasonably likely language is only a burden of proof the government has if there is a general intent to communicate with law enforcement as opposed to the situation of communicating with a specific law enforcement officer.

Why would it be necessary to include that as an essential element when in fact the elements -- the essential elements under the statute is included in the indictment? I'm not following that part of the argument.

MS. DALEY: Well, Your Honor, as the court wrote in *Fowler* -- and this is from -- I don't have the page number before me, but -- I'm sorry -- 2045, For another thing, to allow the government to show no more than the broad indefinite intent we have described, the intent to prevent communication to law enforcement officers in general, would bring within the scope of the statute many instances of witness tampering and purely state investigations and proceedings, thus, extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind.

I don't think it's -- it's correct for the government to argue or for the Court to conclude that they do not need to allege this material fact because it can be assumed or hypothesized that it would have eventually landed before federal law enforcement.

And, in fact, the court in *Baugh* did apply the -- the standard in *Fowler* that it at least could not be hypothetical

or possible.

So, in *Baugh*, the Court did consider that material fact, but declined to follow the reasoning in *Ortiz*, but certainly found that it -- that the allegation would eventually come to federal law enforcement was beyond remote hypothetical possibility. And, in fact, the -- the -- the decision in *Baugh* consistently refers to interstate in terms of the conduct.

And the issue that was not raised in *Baugh* because it didn't have to be raised was the defendants in that case were put on sufficient notice of what they were alleged to have done and what material facts were necessary for the government to prove and for the defense to guard against double jeopardy.

Here, the defendant is left to guess what exactly is the federal nexus here and whether or not he will at trial actually face charges and allegations that the grand jury even considered.

I don't think the Court should discount the importance of Rule 7, which clearly says they must -- the government must cite the statutory language. And they failed to do so without explanation and merely said that another statute, which was also not cited, 1515, suffices. But it's the defense position that it does not.

THE COURT: Thank you.

Counsel, I'll hear you.

MR. FOGERTY: Thank you, Your Honor.

The Superseding Indictment sufficiently alleges a violation of 1512(a)(1)(C).

And I'll take the defendant's arguments in turn, starting with the argument about the form of the indictment.

As the Court acknowledged, 1515(a)(4) specifically defines the term of art that's included in the indictment, "law enforcement officer."

It only includes federal employees and federal law enforcement officers. There's no risk that that term incorporates anyone outside the federal universe. That alone is sufficient, as the court has held, as the First Circuit has held, where an indictment alleges a term of art, the component parts of that term are incorporated into the indictment. And that is the case here.

And just to -- I invite the Court to look elsewhere in that statute at 1512(g)(2), which is the subsection that eliminates the mens rea requirements regarding the federal status of the target of the communication.

In that section, the -- the statute identifies a judge of the United States or a law enforcement officer, again using that standalone term that the government included in the indictment.

In terms of the arguments about --

THE COURT: And, counsel, what do you say to your sister's arguments about what was in the mind of the grand

jurors?

MR. FOGERTY: Your Honor, I think it's well-settled as we cited in our brief that an indictment that incorporates the statutory language and the elements of the indictment is good enough to call to trial. And the court must apply the presumption of regularity in those grand jury proceedings and not at this stage allow the defendant to look behind that determination to challenge on a preliminary basis what the grand jury considered both in terms of the evidence and the instructions.

In *Lopez-Lopez*, the First Circuit held that the government has no obligation to instruct the grand jury on matters beyond the statutory language for the statute that's charged.

That -- that supports the proposition that even the government wasn't required to instruct the grand jury on the reasonable likelihood construction of the statute's intent element. Therefore, it can't serve as a basis for dismissing an indictment.

Your Honor, there's -- there's been cited no -- no authority for the proposition that "law enforcement officer" must include the statutory cite as counsel has argued.

And I'll turn, Your Honor, to the argument regarding Count Two just briefly. The argument to dismiss Count Two, I think, is composed of -- well, maybe one paragraph in the

defendant's motion to dismiss.

And really, the gist of their argument is that the indictment rises and falls on the Court's determination on Count One. That cannot be the case. There is no argument about the deficiency of the language in Count Two.

THE COURT: Well, I took your sister's argument to be that Count Two, which I have in front of me, explicitly references the violation of 1512.

MR. FOGERTY: It does. It properly references that statute, that -- and it tracks the statutory language that an 1841 violation must identify a -- kind of a predicate offense. And that's what it does. It tracks the language of the statute.

The Count Two allegations do not specifically incorporate by reference the charging language from Count One. So to the extent there was a deficiency in the actual charging languages of Count One, those are not incorporated in Count Two because there's no requirement that they be incorporated in Count Two. And so the defendant has not come forward with a supported argument for dismissal of that standalone federal offense in Count Two.

And, Your Honor, I'll turn now to the argument from the defendant on the substance of the indictment. And really what it boils down to is a variety of arguments on the application of the Supreme Court's --

THE COURT: And, counsel, not to get too far ahead of myself at this, but, obviously, like counsel, I'm also thinking about jury instructions.

Wouldn't the jury instructions for the purposes of a jury finding guilt or innocence on Count One be reflected in Count Two as to the extent that it alleges a violation of 1512?

MR. FOGERTY: I believe Count Two does contemplate a violation. It says conduct violating 1512. So yes. So there would be some reference to a description of the -- of what would be required in terms of proof on the underlying 1512.

But that kind of -- that is the proof component, and that's really what *Fowler* is about, the sufficiency of the evidence on the intent element, not a pleading standard.

So *Fowler* set forth this reasonable likelihood standard or showing as a less than proof beyond a reasonable doubt requirement on a component of the intent element in circumstances where the defendant intended to -- did not have a specific federal law enforcement officer in mind when -- when committing the offense.

Kind of taking a step back, there's two things to keep in mind when considering this reasonable likelihood standard.

One, it is not a pleading standard. It is specifically about the quantum of evidence the government must prove in a certain scenario, not what the government must allege in an indictment. It did not create a C change in

pleading standards in the First Circuit or elsewhere.

What it did was interpret the -- the intent element. And counsel referenced the *Troy* case which uses this term "judicial gloss." I think the -- the important component of *Troy* is -- and its progeny is that it's well-settled that courts do not require an indictment to incorporate judicial interpretations of elements or statutory language.

THE COURT: And what do you say to your sister's other argument about notice to the defendant about the factual predicate for Count One?

MR. FOGERTY: The notice is there. The -- the federal law enforcement officer, the federal offenses, and the contextual information in the introductory paragraphs, those are there.

It is alleged that the communication would go to a federal law enforcement officer, and, at trial, the government will introduce evidence to prove or make a sufficient showing under the reasonable likelihood standard that indeed one relevant communication would go to a federal law enforcement agency, the FBI.

And any additional detail is properly -- may be properly disclosable pursuant to a -- to a motion for a bill of particulars. But that doesn't make the indictment deficient. The indictment tracks the statutory language, uses the term of art that's -- that's required, and apprises the defendant of

the circumstances, the victim, the events leading up to the offense, and the offense. And at trial, additional evidence will be used to prove the underlying facts.

I'll move along, Your Honor.

The case in *Ortiz,* which I'll touch on briefly here, it -- ultimately, the holding is inconsistent with First Circuit law. It is not the reasonable likelihood standard that makes the offense a federal offense. It's the statutory language. Reasonable likelihood is an evidentiary standard. The statutory language is the information that must be in the indictment and is in this case.

And as the court -- and I've already referenced, the -- the second prong or the second basis for the court's decision in *Ortiz* relies on a mis -- misinterpretation of the court's role with respect to the grand jury finding.

The court at -- is not -- is -- at this point should apply the presumption of regularity and not police the instructions that are provided to the grand jury because, based on what's alleged in the indictment, the grand jury considered the statutory language, and that's sufficient for the indictment to stand.

In terms of the specificity in the indictment, I'll just -- I'll say two things, Your Honor.

One is the defendant's argument in the brief at least comes very close to applying an assumption that any -- that the

statute only applies to circumstances where there are actual communications to a law enforcement officer or, in a sense, a communication that is almost in transit.

In those circumstances, you know, the -- identifying the specific communication would be an easy thing to do. The problem here is the Supreme Court has held that this statute applies to circumstances like the one we have in this case, which is a circumstance where the defendant acted and killed the victim before she could communicate the communication to law enforcement.

And so that is what the government was getting at with the -- kind of the -- demanding the metaphysical impossibility in terms of the specific information about a communication to law enforcement.

And the final thing, Your Honor, is the defendant's reliance on *Russell* is -- is misplaced. *Russell* is a case in which the Supreme Court examined an indictment alleging that defendants refused to answer questions that were pertinent to the subject matter of --

THE COURT: It was a different charge as well; right?

MR. FOGERTY: It was a different charge and it was a case in which the court was addressing the core -- in the court's words -- the core of criminality of an element in an indictment.

Here, the defendant's arguments are all centered

around this reasonable likelihood standard, which is not about a -- which is not about a -- the core of criminality. Indeed, it's about an interpretation of an element.

And in *Fowler*, the Court did that in the context of the sufficiency of the evidence on that small component of an element.

So those two, *Fowler* and *Russell*, cannot be read together to impose upon the government an obligation to plead something that's inconsistent with what the First Circuit has said needs to be in an indictment.

And for that reason, among others, we ask that the Court deny the motion.

THE COURT: Thank you.

MR. FOGERTY: Thank you.

THE COURT: Counsel, brief rebuttal?

MS. DALEY: Yes, Your Honor.

As to the government's intention that the general allegations in this case include an allegation of -- of a report to federal law enforcement, there -- there is no such claim in the general allegations in this case.

As I stated in my initial argument, there's one paragraph referencing a report made by a third party -- not the alleged victim -- to local law enforcement. There is no allegation, and that's, obviously, a huge part of the -- of the defense's issue in this case in terms of the defendant not

being sufficiently apprised of the material facts that the government alleges forms the offense conduct in this case.

I may have misunderstood the government's point when it comes to this metaphysical impossibility. But if the government is saying that killing a witness to a crime before there is any -- any indication they would report it is -- is a violation of 1512, that's -- that's not correct.

If a bank robber decides to kill one of his coconspirators because he's worried at some point he might tell someone, that's just murder, and that's not a federal offense based on those facts. So I'm -- I'm not sure if that's -- that was the government's point.

They do need to show, as the Court held in *Baugh*, something beyond -- something beyond a hypothetical that this would have been reported. And I do think -- when the government says that at trial they will elicit additional facts, I -- I think that that borders on a constructive amendment which is not permissible. And this is citing from *United States v. Coleman*, a case that was decided in this Circuit last July.

A constructive amendment occurs when the government's evidence or arguments or the court's jury instructions alter the terms of an indictment such that the defendant is effectively charged with a different offense than the one returned by the grand jury. Constructive amendment is

considered prejudicial per se and grounds for a reversal of a conviction in part because it violates the defendant's rights under the presentment clause of the Fifth Amendment.

And, again, I'm not sure if that's the government's point. The issue here is, has the defendant been sufficiently apprised of the offense conduct and is -- can the court, first of all, identify that there is federal jurisdiction in this case?

And I go back to my initial point. If this grand jury was not given the appropriate statutory language -- and I understand the government says that they -- they were, but that's not the plain reading of the indictment in this case.

Section 1512 requires that the report that -- that the -- that the intent is to hinder, delay and prevent the communication to a law enforcement officer of the United States. That "of the United States" is not in the indictment in this case.

So, again, I think the Court and the defendant are left to determine whether or not a grand jury of laypeople decided it was sufficient that there was a call by a third party to local law enforcement of a possible federal offense. And that is not sufficient. That is beyond hypothetical, runs afoul of *Fowler* and *Baugh*, and certainly *Ortiz*.

THE COURT: Thank you.

MS. DALEY: One moment, Your Honor.

THE COURT: Yes.

(Pause.)

MS. DALEY: And, Your Honor, with regard to the -- I understand that the government in the indictment referenced what possible federal offenses might be at play here, which they named three, but they didn't need to name three. They only needed to name one. So if the Court wants to think about what is judicial gloss, those two other counts are properly termed "judicial gloss."

But, more importantly, that third party who called local law enforcement did not report a federal offense. So I think the government is -- is -- is -- loses on that point as well.

To go beyond that requires the Court to engage in hypotheticals, which, again, is not something that is -- is permissible, and it certainly violates the defendant's due process rights and his rights to guard against double jeopardy.

THE COURT: Thank you.

MS. DALEY: Thank you.

THE COURT: Counsel, I, as always, appreciate the arguments on either side. I want to give the matter some further thought, and we'll go from there.

MR. FOGERTY: Your Honor, may I just respond just very briefly?

THE COURT: Very briefly.

MR. FOGERTY: So, Your Honor, what -- what I meant to convey on the first point is that the statute applies to the circumstances where the killing occurs before there's a communication.

And on the second, no -- there's no additional facts at trial. There's evidence to support the allegations in the indictment.

And finally, the third point, Your Honor, the Court can be assured that the grand jury got the correct instructions because they're reflected in the grand jury's indictment. The statutory language is what the grand jury considered.

THE COURT: Thank you.

MR. FOGERTY: Thank you, Your Honor.

THE COURT: Again, counsel, thank you. And again, I will consider the matter further and then make a ruling. Thank you.

MS. STEVENS: Thank you.

THE COURT: All rise.

(Adjourned at 12:14 p.m.)

- - - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Jessica L. Bisaillon March 16, 2026
Jessica L. Bisaillon, RPR, CRI Date
Official Court Reporter