UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 24-cr-10259-DJC

UNITED STATES

v.

MATTHEW FARWELL

ORDER ON GOVERNMENT'S MOTION FOR DETENTION

KELLEY, U.S.M.J.

I. Introduction.

Matthew Farwell is charged in a superseding indictment with killing Sandra Birchmore to prevent her from disclosing information about Farwell's commission of federal crimes, in violation of 18 U.S.C. § 1512(a)(1)(C), and causing the death of her unborn child, in violation of 18 U.S.C. §§ 1841(a)(1), (a)(2)(A) and (a)(2)(C). (#63.) Farwell formerly was an officer of the Stoughton Police Department in Stoughton, Massachusetts. He met Birchmore when he was an instructor and she was a participant in the Stoughton Police Explorers Academy, a vocational program for local youth. The government has strong evidence that Farwell began having sexual intercourse with Birchmore starting when she was 15 years old, and continuing until near the time of her death in early 2021. *Id.* at 2.

In December 2020, Birchmore learned that she was pregnant and told Farwell he was the father (although he was not). *Id.* The government alleges that on February 1, 2021, Farwell killed Birchmore by strangling her in her apartment and staging her body to make it appear that she had committed suicide. *Id.* At the time she and her unborn child died, her unborn child was between 8 and 10 weeks old. *Id.*

1

Farwell had an initial appearance on August 28, 2024. (#13.) The government moved for detention under 18 U.S.C. § 3142(f)(1)(A) and (B) ("the Bail Statute"), on grounds that he is a danger to the community, and (f)(2)(A) and (B), on grounds that he poses a serious risk of flight and obstruction of justice. (#9.) In early September 2024, Farwell filed a motion asking the court to enter a voluntary order of detention, which this court allowed. (##18, 21.)

In October 2025, Chief Judge Casper set a trial date of October 5, 2026. (#58.) On March 26, 2026, Farwell filed a motion asking that the court hold a detention hearing and setting out the reasons that he should be released. (#106.) The government filed a supplemental memorandum in support of detention with 14 exhibits attached (under seal) (#111) and later filed a second supplemental memorandum with 9 exhibits attached (under seal). (#127.)[1] This court held a detention hearing on April 28, 2026. (#133.) Shortly after the hearing, the government filed a third memorandum in support of detention. (#136.)

For the reasons set out below, the court finds that the government has met its burden on risk of flight and on danger to the community and obstruction and orders that Farwell be detained pending trial.

II. <u>Legal Standard</u>.

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released," or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 791-93

---

[1] Exhibits were filed under seal because, among other reasons, they are subject to a protective order in this case. (##112, 128.)

(1st Cir. 1991). If there is some risk, the court should consider whether a combination of release conditions "will serve as a reasonable guard." *Id.* at 791. The government bears the burden of persuasion to establish that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991).

In determining whether suitable release conditions exist, the judicial officer must take into account: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors must be weighed, and the decision whether to release is an individualized one. *Patriarca*, 948 F.2d at 794.

III. <u>Analysis</u>.

A. <u>The Nature and Circumstances of the Offense</u>.

Until 2017, the Stoughton Police Department operated a program called the Stoughton Police Explorers Academy, a quasi-military program designed to expose young people to policing. (#9 at 3.) Birchmore joined the program in 2010, when she was 12 years old, and remained in the program through 2016. *Id.* at 3-4. Farwell was an instructor in the program during the time Birchmore was in it. *Id*.

As early as 2012, Farwell began communicating with Birchmore online, when she was 15 and he was 26. *Id*. at 4. The government points to text messages between Farwell and Birchmore that clearly establish that he began having sex with her when she was 15, and he continued his sexual relationship with her until around the time of her death in early 2021. *Id.* at 4, 5. Birchmore became

3

pregnant in 2020 and told Farwell he was the father. *Id*. at 5. She reportedly told friends that he became physically abusive toward her after hearing the news. *Id.*

In January 2021, a friend of Birchmore's called the Stoughton Police Department and told a department employee about Farwell's sexual relationship with Birchmore; afterward, the employee told Farwell about the call. *Id*. Farwell demanded that the employee not tell anyone about it. *Id*. Farwell also angrily texted Birchmore about her revealing details of their relationship to others. *Id*. at 6.

On February 1, 2021, Farwell, wearing a face mask (even though it was known that he was resistant to COVID-19 mask mandates), visited Birchmore's apartment. *Id*. The government's theory is that he strangled Birchmore and then repositioned her body and staged her apartment to make it look like she had committed suicide. *Id.* at 8-9.

B. The Weight of the Evidence.

At the detention hearing, Farwell's counsel argued that Birchmore committed suicide and mustered facts in support of that argument. (#134 at 5-10). The government responded by reciting in detail the considerable evidence it has that she was strangled and that Farwell had the opportunity and a strong motive to kill her. *Id*. at 24-34. In addition to hearing oral argument and carefully reviewing the extensive briefing in connection with the government's motion for detention, this court has read the numerous, lengthy exhibits the government filed under seal, which, among other things, detail evidence about Farwell's relationship with Birchmore, things he reportedly said to others about her and about her death, and forensic evidence that shows that Birchmore was strangled and did not hang herself. The court will not recite fact-by-fact the parties' positions as set out during argument and in the briefing, since those facts are in the record, and since some of the evidence is under seal.

Notwithstanding the presumption of innocence, this court is required to consider the weight of the evidence in deciding whether Farwell should be released. At this stage of the case, and emphasizing that this court does not have the benefit of cross-examination of witnesses and the full record which will be developed at trial, the court concludes that the evidence against Farwell is very strong, if not overwhelming.

C. The History and Characteristics of the Person.

Except where otherwise noted, the following facts are from the Pretrial Services Report.[2] Farwell is 40 years old. He is married with three minor children. He was born in Massachusetts and has lived here all his life other than when he served in the U.S. Army. Many of his family members live in Massachusetts, and he proposes to live with his mother in Mansfield, Massachusetts if released. While in the Army, from 2004 to 2008, he was an explosives expert. He was deployed to Afghanistan in 2006 for one tour; he had no disciplinary action or court martial while enlisted. Before his arrest he lived in North Easton, Massachusetts with his wife and children. Both he and his spouse have licenses to carry firearms, and at the time of his arrest there were multiple firearms registered to their home address. (#9 at 3.)

Farwell has travelled extensively throughout the United States but has only been overseas briefly, a long time ago, for vacations in Tahiti and Aruba. His father resides in Tennessee and his brother in New Mexico. Farwell worked in law enforcement for fourteen years; he was a police officer in Wellesley, Massachusetts, and then in Stoughton, Massachusetts from 2012 until he resigned in April 2022. While in the Stoughton Police Department, he served as a firearms and explosives

---

[2] Probation did not recommend release in this case, finding that Farwell presents multiple risk factors for non-appearance and danger to the community.

instructor. After he resigned from the Stoughton Police Department, he owned and operated a hauling company for about two and one half years until the time of his arrest.

Farwell has been diagnosed with anxiety, depression, and post-traumatic stress disorder by the Veteran's Administration. He has no issues with substance abuse. He has no criminal record.

The government argues, mainly based on communications between Farwell and Birchmore, that Farwell had a "long track record" of perpetrating physical and sexual violence against Birchmore. (#9 at 10.) The government also argues that he is a danger to children in general, based on evidence gathered during the investigation of this case that shows, for example, that Farwell committed statutory rape by having sex with Birchmore when she was 15, and that he expressed his wish that she had been younger than that when they first had sex. *Id.* at 11-12. In addition, the government argues that Farwell possessed images depicting sexual violence against women, *see id.* at 11, and that after Birchmore's death, he accessed pornography focused on "teen sex," demonstrating that he "maintains an interest in the sexualization of teenagers[.]" (#127 at 2-3.)

D. The Nature and Seriousness of the Danger Posed by the Person's Release.

Farwell is accused of an extremely serious crime: murdering Birchmore with premeditation, knowing that she was pregnant and apparently believing that the child was his. Further, it appears to this court, having reviewed all the available briefing, including voluminous materials that are under seal, that many of Farwell's actions as uncovered by the investigation in this case may be seen as irrational. Given the nature of the crimes charged and the facts of this case, if Farwell were released and reoffended, there is a grave risk that the crime would be a serious one.

E. <u>Dangerousness.</u>

The court agrees with the government that as a rule, a murder charge, in and of itself, weighs in favor of a finding of dangerousness. *See* #9 at 14, citing *United States v. Zhang,* 55 F.4th 141, 150 (2d Cir. 2022). Still, the court must consider the factors dictated by the Bail Statute and decide if release is appropriate notwithstanding the charges. Here, the government has strong evidence that Farwell murdered Birchmore, someone with whom he had a close and long-term relationship, with premeditation, knowing that she was pregnant. *See id.* at 2. The court also considers the fact, mentioned above, that many of the materials the court has reviewed suggest that Farwell acted irrationally in many respects. Finally, the court considers that he has extensive training and experience with firearms and explosives.

Farwell argues that for more than three and one half years after Birchmore's death, he did not commit any crime, thereby demonstrating that he is not a danger to the community. *See* #106 at 22. Certainly the fact that he did not commit new crimes in the aftermath of Birchmore's death is in his favor. It is not clear to the court what Farwell knew about the case against him before his arrest, however. Based on the balance of the factors under Section 3142(g), the court concludes, by clear and convincing evidence, that there is no condition or combination of conditions that would reasonably assure the safety of others and the community.

F. <u>Risk of Flight.</u>

Farwell is facing a mandatory life sentence if convicted of killing Birchmore. As stated above, the evidence against him is strong, if not overwhelming. Farwell's counsel argued in his motion for release and at the detention hearing that after Birchmore's death, the fact that Farwell did not flee but rather "stayed put[,]" maintained his ties with his family, and started a business demonstrates that he

is not a flight risk. *Id.* at 11, 17-18; *see* #134 at 13. The government counters that Farwell thought he had "gotten away with" Birchmore's murder until June 24, 2024, when it was reported in the media that an expert had opined that Birchmore had been murdered. (#127 at 3-4.) Farwell was arrested on August 28, 2024, so, obviously, he did not flee in the two months after the media report. As stated above, however, the court has insufficient information to gauge what Farwell knew about the murder investigation such as, for example, how strong the evidence against him might be. That he did not flee after the media report does not demonstrate that he would not flee now, when he knows the extent of the case against him and what penalty he is facing.

The court finds that the government has met its burden on risk of flight.

G. Risk of Obstruction of Justice.

The government argues that Farwell poses a serious risk of obstructing justice if released because there is strong evidence that he killed Birchmore in order to prevent her from revealing his past crimes and then altered the crime scene to prevent his crime from being discovered; that he often told her to destroy evidence of their relationship by telling her to delete texts; and that he attempted to delete incriminating data from his own phone. *See* #9 at 1-2, 7, 9. In addition, the government points to evidence that Farwell lied to Massachusetts State Police detectives who were investigating Birchmore's death. *Id*. at 9. The court finds that given the totality of the facts of this case known to the court at this time, the government has met its burden on obstruction of justice.

ORDER OF DETENTION PENDING TRIAL

IT IS ORDERED:

1.  That defendant be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That he be afforded a reasonable opportunity for private consultation with counsel; and

3. That on order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which he is detained and confined shall deliver him to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).


                                                    /s/ M. Page Kelley
                                                    M. Page Kelley
May 26, 2026                                        United States Magistrate Judge

9