UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

MATTHEW FARWELL,

Defendant

CRIMINAL No. 24-10259-DJC

**GOVERNMENT'S MOTION FOR CURATIVE INSTRUCTIONS**

The United States of America submits this motion for relief regarding issues raised by defendant Matthew Farwell's counsel's opening statement. First, defense counsel's opening statement included two significant misstatements of law regarding the elements of the offense and verdict unanimity. The government respectfully requests that the Court give the jury a curative instruction to correct these misstatements before the jury begins to receive any evidence. Second, defense counsel referenced the substance of multiple disputed or unnoticed exhibits in her opening statement. The very reason these exhibits are disputed is because they are misleading, unreliable, or blatant hearsay. Referring to the content of disputed exhibits in opening statement was improper, and to ensure that this conduct does not continue, the government requests a specific order prohibiting the parties from doing what was done in the defense opening. Specifically, the government moves the Court for an order prohibiting the defendant from asking witnesses about the substance of any disputed exhibit or any unnoticed exhibit without prior notice to the Court and the government.

**Misstatements of the Law**

First, in defense counsel's opening statement, Attorney Stevens told jurors that "if any one of you finds that the government has not met their burden of proof beyond a reasonable doubt, you

must acquit Matthew Farwell." Transcript of Proceedings on October 9, 2026 (Rough) at 41:5-7.[1] This is an obvious misstatement of the law. If the government had told the jury that only one of them needed to find the defendant guilty beyond a reasonable doubt to convict, undoubtedly, the defendant would have moved for a mistrial.

To address counsel's misstatement of a fundamental principle of criminal jury trials, the government respectfully requests that the Court give a curative instruction before the jury begins hearing testimony. Specifically, the Court should give the jury a brief reminder that any verdict that they reach—whether it is guilty or not guilty—must be unanimous and a single juror's doubt does not require an acquittal just as a single juror's decision to convict does not require a conviction. To the extent that they were told otherwise by counsel in her opening statement, the jurors should disregard that. The morning of October 13, 2026, provides a natural place for the Court to provide this instruction given the three-day break between openings and the beginning of testimony.

Second, defense counsel told the jury that even if they believe that the defendant killed Ms. Birchmore, the government must also prove that he did so "to prevent a communication of a federal crime to a federal law enforcement officer." Tr. at 33: 21-24. Counsel told the jury that, while Ms. Birchmore "might tell [the defendant's] wife. Make no mistake. His wife is not a federal law enforcement officer." *Id*. at 34:103. Counsel misstated the law and improperly increased the government's burden under 18 U.S.C. § 1512(a)(1)(C). The government is not required to prove that, had she not been murdered, Ms. Birchmore herself would have directly reported the defendant's crimes to a federal law enforcement officer, nor that the defendant's sole motive for

[1] The records cites are to the rough, unofficial transcript of the proceedings on October 9, 2026. In light of the holiday weekend, the government anticipates receiving the official transcript on or about October 13. At that time, the government will file the official transcript.

murdering her was to prevent such a communication. As the government stated in its proposed jury instructions:

> The government does not have to prove that Mr. Farwell or Sandra Birchmore had federal law enforcement in mind, but the government must show that there was a reasonable likelihood that a relevant communication, had it actually occurred, would have been made to a federal law enforcement officer. Moreover, you need not find that preventing a communication about the commission or possible commission of one of the foregoing federal offenses was the defendant's sole intention. It is sufficient if you find beyond a reasonable doubt that that he possessed this intent among others.

*See* ECF No. 191 (Government's Proposed Jury Instructions) at 39-40, citing *United States v. Casanova*, No. 13-CR-10077-DJC, ECF No. 768 at 135 (D. Mass. 2016); FIRST CIRCUIT PATTERN INSTRUCTION NO. 4.18.1512(a)(1)(C); *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014); *see also United States v. Burgos–Montes*, 786 F.3d 92, 112 (1st Cir. 2015) (affirming an 18 U.S.C. § 1512(a)(1)(C) conviction where the defendant killed a witness with the intent both to prevent future communications and retaliate for past communications and explaining that Section 1512(a)(1)(C) does not require proof of the defendant's state of mind as to the federal status of officers, so long as the communication concerned a federal offense and could ultimately reach federal authorities). Indeed, in his own proposed jury instructions, the defendant asked the Court to instruct the jury that "the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *See* ECF No. 197 at 16.[2]

[2] The government is not waiving its right to object to this instruction but is simply including it here to show the defendant's prior acknowledgement of the legal requirements of proof under 18 U.S.C. § 1512(a)(1)(C).

The government respectfully requests that the Court issue a curative instruction before the beginning of testimony. The government requests that the Court provide the following, which was included in the government's timely filed proposed jury instructions:

> As to Count One, the government must prove beyond a reasonable doubt that:
>
> First, on or about February 1, 2021, the defendant killed Sandra Birchmore with malice aforethought, willfully, deliberately, maliciously, and with premeditation; and
>
> Second, that the defendant did so with the intent to prevent a communication about the commission or possible commission of a federal offense, to wit, Deprivation of Rights Under Color of Law, Coercion and Enticement, or Wire Fraud, to a federal law enforcement officer.
>
> The government need not prove that the defendant or Sandra Birchmore had federal law enforcement in mind, but the government must show that there was a reasonable likelihood that a relevant communication, had it actually occurred, would have been made to a federal law enforcement officer.
>
> Moreover, you need not find that preventing a communication about the commission or possible commission of one of the foregoing federal offenses was the defendant's sole intention. It is sufficient if you find beyond a reasonable doubt that that he possessed this intent among others.

ECF No. 191 at 39–40.

Court routinely give curative instructions where a jury has received information in error. *See, e.g., United States v. Freeman*, 208 F.3d 332, 345 (1st Cir. 2000) ("We have held that 'within wide margins, the potential for prejudice . . . can be satisfactorily dispelled by appropriate curative instruction."). In this case, the jury was misled about the elements of the offense and the fundamental principle of jury unanimity. And they sat with that misinformation over the long

weekend. The government requests that the Court promptly cure these misstatements before the jury begins hearing evidence.

When it comes to misstatement of the law on critical issues such as these, it is not simply enough to tell the jury that opening statements are not evidence. Jurors assume that attorneys, presumed experts on the law, will relay the law to them with accuracy. That did not happen here. This will be a long trial, with the jury not hearing the true elements and unanimity instruction for several weeks. To ensure a fair trial, the Court should instruct the jury evidence on these issues now. Every witness and exhibit that the jury considers before such a curative instruction will be viewed by the jury under a heightened burden of proof and with a misunderstanding of the concept of unanimity.

**Referencing Disputed or Unnoticed Exhibits**

The defendant opened on at least six disputed or unnoticed exhibits without prior notice to the Court or the government.[3] The defendant has noticed 248 exhibits and 175 of those remain in dispute because the government has objected to their admission. Because of the volume of disputed exhibits, the government was not able to identify these issues in real time during Farwell's opening statements. After reviewing the transcript and the joint exhibit lists (*see* ECF Nos. 263, 304, and 330), the government has identified the following statements in defendant's opening that improperly reference the contents of disputed or unnoticed exhibits:

1. Defense counsel described in detail two cache images—disputed exhibits Z13 and A14—to which the government objected under Rules 401 and 403. S*ee* Tr. at 30:5-11. Defense counsel further stated in opening that Ms. Birchmore "calls up" and "pulls up" these images, which

[3] By contrast, the government was careful only to reference or include agreed-upon exhibits, and even discussed and confirmed them with defense counsel prior to openings.

(as the government argued in court) the defendant cannot prove. There is no evidence, nor does defense counsel have a good faith basis to believe that she will ever have evidence, that Ms. Birchmore viewed these specific cached images. And, what's worse, there is direct evidence that Ms. Birchmore certainly never "called up" these images or engaged with them at all. In fact, what all experts, including the defense expert, will say is that there is no way to prove whether the victim viewed the cached images, but they can be certain that she never "called them up" or otherwise sought them out.[4] When the defense noticed these exhibits in the final days before trial, the government made its objection to them clear. Yet, without seeking leave of Court, defense counsel referenced them anyway. If defense counsel wanted to reference these items in opening, they needed to raise it with the Court.

2. Defense counsel stated in opening that Ms. Birchmore told a friend, "I was gushing blood." Tr. at 30:25. Such a text message does not exist. It certainly is not in any exhibit the defendant has noticed. Even if such text message did exist, it would be hearsay with no applicable exception that would make it admissible. The government has not found any text from Ms. Birchmore that stated she "was gushing blood."[5] Defense counsel did correctly state in opening that Ms. Birchmore texted people in or around January 18 and 19, 2021 that she was spotting or bleeding. *Id*. at 30:21-23. However, on or around January 20, 2021, she texted friends that her

[4] A party could argue that a cell phone user viewed a cached image if, for example, the user conducted an online search specifically referencing the image shortly after it was cached. That would tend to prove that the user saw the image. Here, Farwell's counsel does not have that sort of evidence.

[5] To the extent counsel purported to reference a statement of an unidentified witness who allegedly indicated that Ms. Birchmore said she was "gushing blood," (a statement that does not appear to exist) it is inadmissible hearsay about something that allegedly happened in the past. It is not a present sense impression nor a then-existing condition, and it is not admissible under any exception to the rule against hearsay.

bleeding stopped. She did not text anyone about spotting or bleeding after that date. By referencing a text message or unidentified witness statement that does not appear to exist and consists of inadmissible hearsay, defense counsel left the jury with the impression that Ms. Birchmore was experiencing a miscarriage on February 1, 2021. She was not. She spotted on January 18th and 19th, the bleeding stopped by January 20th,' and she received an ultrasound confirming a healthy baby with a heart rate of 167 beats per minute on January 25, 2021. *See* Exhibit 365. Had the defendant provided advance notice of its intent to tell the jury that Ms. Birchmore allegedly said, "I was gushing blood," the Court could have intervened. Now, the jury is left with information about inadmissible evidence that does not appear to exist.

3. Defense counsel also described the inadmissible hearsay notes of FBI agents. *See* Tr. at 34:23-35:1 and 37:22-24. Not only did defense counsel discuss the alleged contents of these notes, but she also described an alleged statement of another person contained within those notes, providing the jury with double hearsay that will not be admitted at trial. Again, these notes are disputed exhibits R8 and S8, to which government previously objected under Rule 801. Counsel referred to these items without seeking leave of the Court. That was improper.

4. Defense counsel claimed that Ms. Birchmore texted friends that "Matt is denying paternity." Tr. at 40:9-10. Once again, no such texts exist. Even if they did exist, they are not on any exhibit list. While Ms. Birchmore did text friends about the defendant not wanting to be involved with the baby or not wanting to sign the baby's birth certificate, she never indicated that the defendant denied paternity. The first mention of the defendant denying being the father of Ms. Birchmore's baby was on February 6, 2021, when the defendant made that self-serving statement to Norfolk CPAC investigators John Fanning and Matthew Dunne. That short interview occurred in a school parking lot and neither law enforcement officer recorded it or took notes of any kind.

5. Defense counsel quoted a series of text messages that Ms. Birchmore allegedly sent in the month prior to her death which are either (a) not included in noticed exhibits or (b) part of disputed exhibits.[6] *See* Tr., 28:19-30:4 and 30:21-31:4. Some of the texts are included in disputed exhibit H14, to which the government has objected on the basis of Rules 401, 403, and 801. The remaining texts are unnoticed and, had the government received notice, it would have objected under those same three rules.

6. Finally, defense counsel explicitly referenced an affidavit that is also a disputed exhibit, T13. *See* Tr. at 32:4. The government objected to exhibit T13 under Rules 801, 401, and 403, citing ECF No. 201 (under seal) and noting its position that the exhibit is barred by the Court's ruling in ECF No. 271. *See* ECF No. 304 at 56. The government acknowledges that the Court overruled its objection to this exhibit during trial. However, the government lists its objection here because it is another instance of the defendant referencing a disputed exhibit without raising it with the Court in advance.

Given the sheer volume of references to disputed or unnoticed exhibits, it is clear that defense counsel did not heed the Court's admonition about inappropriate references during openings. Defense counsel told the jury about this evidence before the Court had the opportunity to review the government's objections and rule on whether this evidence should be put before the jury in this trial. There is no way to un-ring the bell that defense counsel rung during their opening statement, but the government requests that the Court strongly caution defense counsel from attempting to reference disputed or unnoticed evidence again. Specifically, the governments asks

---

[6] The government acknowledges that the defendant has noticed the entire extractions of Ms. Birchmore's two iPhones and laptop, as well as her entire Facebook account. However, simply identifying an electronic device or account containing millions of digital artifacts does not reflect a good faith attempt to provide another party with notice what will be offered.

that the Court prohibit defense counsel from substantively questioning any witness about the contents of any unnoticed or disputed exhibit (aside from impeachment evidence) without first addressing it with the Court outside the presence of the jury.

## Conclusion

The government respectfully requests that the Court give curative instructions identified herein before beginning testimony on October 13, 2026. The government further requests that the Court admonish defense counsel, outside the presence of the jury, regarding their use of disputed or unnoticed exhibits, or evidence derived therefrom.

Respectfully submitted,

LEAH B. FOLEY
Acting United States Attorney

By: *Torey B. Cummings*
TOREY B. CUMMINGS
BRIAN A. FOGERTY
ELIZABETH C. RILEY
Assistant United States Attorneys

Dated: October 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney

Date: October 11, 2026