**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No. 1:24-cr-10259-DJC |
| v. | ) | |
| | ) | |
| MATTHEW FARWELL | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT "SPECIALLY RELEVANT" EVIDENCE (DE 338)**

The government has moved in limine to introduce evidence that the defendant allegedly engaged in other consensual extramarital affairs (DE 338). They claim that defense counsel, in her opening statement, opened the door to this line of inquiry. The prosecution is wrong and is acting in bad faith.

The prosecution leads off its pleading by totally mischaracterizing defense counsel's words, "Attorney Stevens opened this trial by telling the jury that Farwell's bizarre conduct was merely evidence of an innocent man's desire to hide his infidelity from his wife."

> The defendant's opening statement made the special relevance of the extramarital affairs crystal clear. First, Attorney Stevens told the jury, "Matthew Farwell is a man who had an affair." Transcript of Proceedings on October 9, 2026 (Rough) at 28.1 Second, she explained that the innocent reason why Farwell wore a mask when he visited Ms. Birchmore on Feb. 1 was: "[H]e's wearing a mask, which is what people having affairs might do." See Tr. at 40. Third, Attorney Stevens told the jury that they will not find evidence that Farwell intended to prevent a communication to a federal law enforcement officer, adding Farwell's "wife is not a federal law enforcement officer." Tr. at 34.
> (Government's MiL, DE 338, pp. 2-3).

This is an outright distortion. Ms. Stevens actually said,

"Matthew Farwell is a man who had an affair. He's made regrettable mistakes. He's human. Matthew Farwell did not kill Sandra Birchmore. He did not." (Transcript (Tr.) 2026-10-09 USA V. FARWELL, pg. 27, Attached as Exhibit A).

"There's snow on his hood and he's wearing a mask, which is what people having an affair might do." (Tr., pg. 39).

> "In fact, Ms. Cummings pointed to you the one thing they could point to you in the opening, that she might tell his wife. Make no mistake. His wife is not a federal law enforcement officer." (Tr., pg. 33).

The prosecution, in its opening, mentioned Matthew Farwell's wife no less than four times, at Tr. pages 2, 8, 9, and 16. It then expresses contempt for opposing counsel when she dares to respond.

Furthermore, the government omits from its filing what they know to be the source of Ms. Stevens's line in her opening regarding the mask. It comes from their own discovery and their own law enforcement witness.

On October 3, 2026, the government furnished to the defense a 14-page FBI report detailing a September 25, 2026 interview of Massachusetts State Police Trooper Matthew Dunne. This meeting was attended by two thirds of the prosecution team itself.

> They talked about the fact that FARWELL wore a mask and had his hood up. However, they also wondered why FARWELL would text BIRCHMORE before he came over and essentially create a record that he went there if he planned on killing her. Tpr. DUNNE thought the mask simply meant that FARWELL was having an affair and didn't want to be seen.

On July 31, 2026, in a 404(b) notice to defense counsel, the government indicated its intent to present evidence of three alleged consensual affairs with adult women allegedly occurring in 2012, 2016 and 2017.[1]

It is odd that the government omits these dates in DE 338. Perhaps it is because the dates of all of these alleged adult consensual affairs pre-date the COVID-19 pandemic?

The government's bad faith on these issues continues in its pleading. "With this evidence, the jury will know that Farwell, an ardent anti-masker, was doing something on Feb. 1, that he did not do with his other adult affair partners. Farwell's attempt not to be seen when he went to

---

[1] Undersigned counsel feels compelled to note that the prosecution filed this 404(b) notice under seal, but chose to file this motion on the same subject on the public docket after trial has commenced.

Ms. Birchmore's apartment proves that he was there to kill Ms. Birchmore, and not merely present as a cheating spouse afraid that his wife may find out."

Assuming arguendo, Mr. Farwell engaged in other adult consensual affairs in 2012, 2016, and 2017, what reason could he have used as an excuse to wear a mask then? A face covering during those years would have surely drawn attention.

Furthermore, the government has no evidence that Mr. Farwell did not wear a mask when he visited Ms. Birchmore prior to February 1, 2026. In their September meeting, the prosecution asked Tpr. Dunne why state investigators didn't get footage from the apartment building to see if Mr. Farwell wore a mask each time he visited Ms. Birchmore previously. Tpr. Dunne replied and then asked why federal authorities failed to do so? Apparently, the government does not wish to answer that query.

> When asked whether FARWELL wore a mask on previous visits to BIRCHMORE's apartment, Tpr. DUNNE replied that this was a fair question. When investigators pulled surveillance video from the apartment, it was for the purpose of determining when BIRCHMORE was last seen on video. That goal was accomplished. They did not look back further in the surveillance video because they had no reason to do so at that time. Tpr. DUNNE asked those present if the federal government had obtained any video of FARWELL's earlier visits to BIRCHMORE's apartments or if they knew whether he'd worn a mask on those occasions.
>
> Once they identified FARWELL on the surveillance video, the concern was to go see FARWELL immediately to lock him into a statement. Lt. FANNING said something to the effect of "let's go now," and they left immediately from Windsor Woods. They wanted to see if FARWELL would deny being at BIRCHMORE's apartment.
>
> During the interview, FARWELL did admit to being at BIRCHMORE's apartment roughly around the same time as surveillance video placed him there.

In her opening, AUSA Cummings told the jury, "You will hear from multiple witnesses that the defendant was actively opposed to wearing a mask during COVID."

Another prosecution witness, one who testified before the Grand Jury investigating this case and appears on their trial list, contradicted this claim outright. The government omitted this evidence from their motion and their opening statement.

During their September 25 meeting with Tpr. Dunne, he also laid out for the prosecution the "significant evidence which pointed to BIRCHMORE committing suicide". This included Tpr. Dunne's conclusion that the journal entry found in her apartment was "absolutely a suicide note".

However, AUSA Cummings in her opening statement declared the following, "There was no suicide note. The girl who told everyone everything about her life left no note." (Tr. pg. 20).

The government misquotes Attorney Stevens and accuses her of acting bad faith because she had the temerity to rely, in her opening, upon the statements of government witnesses. They claim she opened the door to inadmissible evidence because she had the audacity to reference and rebut portions of the prosecution's opening statement. The fact that the government leveled these baseless charges against Ms. Stevens at all is unseemly but doing so after making claims in their opening statement that are directly disproved by their own witnesses is beyond the pale.

Mr. Farwell respectfully requests that the Court DENY this motion.

Dated: October 12, 2026

Respectfully submitted,

MATTHEW FARWELL,
By his attorneys,
*/s/ Joanne M. Daley*
Joanne M. Daley, BBO # 653375
Kimberly C. Stevens, NC State Bar # 20156
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Joanne_daley@fd.org

**CERTIFICATE OF SERVICE**

I, Joanne M. Daley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on October 12, 2026.

*/s/ Joanne M. Daley*
Joanne M. Daley